# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 9, 2014 Session

## JAMES G. CLAYTON, ET AL. v. DAVIDSON CONTRACTORS, LLC, ET AL.

### Appeal from the Chancery Court for Hamilton County
No. 071016     Jeffrey M. Atherton, Chancellor

_____

### No. E2013-02296-COA-R3-CV-FILED-APRIL 24, 2015

_____

In connection with the purchase of a newly constructed home, buyers signed an application for a home warranty, providing for arbitration of warranty disputes. After the buyers experienced several problems with their home, they sued the builders for breach of the implied warranty of habitability and negligent construction, among other things. Over five years after answering the buyers' complaint, the builders moved to stay the litigation and compel arbitration based on the home warranty's arbitration provision. The trial court denied the motion because the arbitration provision did not comply with the Tennessee Uniform Arbitration Act. The trial court also found that the builders' delay in seeking to compel arbitration constituted a waiver of their right to arbitrate. The builders appeal. Because we conclude that the Federal Arbitration Act governs the arbitration provision and consideration of the waiver defense was premature, we vacate and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, J., joined.

Tom D. Weldon, Ringgold, Georgia, for the appellants, Davidson Contractors, LLC, Phillip Lance Davidson and John Mason.

John R. Anderson and Katherine H. Lentz, Chattanooga, Tennessee, for the appellees, John G. Clayton and Kaci W. Clayton.

## OPINION

### I.  FACTUAL BACKGROUND

In the fall of 2006, James and Kaci Clayton purchased a home on Belleau Ridge Drive in Ooltewah, Tennessee from Davidson Contractors, LLC.  According to Ms. Clayton, the owners of Davidson Contractors, Lance Davidson and John Mason, assured the Claytons that they would correct any problems with the construction of the home.  Mr. Davidson and Mr. Mason also told the Claytons that they would receive a "2-10 Warranty" that would cover both craftsmanship and construction for a period of ten years.

At the closing, on November 28, 2006, the Claytons signed a document titled "Builder Application for Home Enrollment."  In pertinent part, the document provided as follows:

> Your Builder is applying to enroll your home in the 2-10 HBW® New Home Warranty program.  By signing below, you acknowledge that you have read a sample copy of the Warranty Booklet, and CONSENT TO THE TERMS OF THESE DOCUMENTS INCLUDING THE BINDING ARBITRATION PROVISION contained therein.  You further understand that when the warranty is issued on your new home, it is an Express Limited Warranty and that all claims and liabilities are limited to and by the terms and conditions of the Express Limited Warranty as stated in the 2-10 HBW® Booklet.  IF YOU, THE BUYER(S), HAVE NOT RECEIVED A CERTIFICATE OF WARRANTY COVERAGE AND A WARRANTY BOOKLET FROM 2-10 HBW® WITHIN THIRTY (30) DAYS AFTER CLOSING THEN THERE IS NO COVERAGE BY THE BUILDER'S WARRANTY INSURER, YOU SHOULD CONTACT YOUR BUILDER.

HBW is a service mark for Home Buyers Warranty Corporation, the warranty administrator.  Home Buyers Warranty Corporation maintains offices in Aurora, Colorado; Tucker, Georgia; and Arlington, Texas.

According to deposition testimony, within a year after moving into their new home, the Claytons began experiencing problems with both the structure and the property.  The Claytons' complaints ranged from the minor, cracked tiles and a leaking shower, to the major, cracks in the foundation and mold growth.  In addition to incurring costs to repair various items, the Claytons allege that their youngest daughter began suffering health issues from mold.  Ultimately, the Claytons vacated the home.

On November 27, 2007, the Claytons filed suit against Davidson Contractors, as well as Mr. Davidson and Mr. Mason individually. The Claytons alleged fraudulent and/or reckless inducement to contract, violations of the Tennessee Consumer Protection Act, breach of implied warranty of habitability, and negligent construction. The defendants each filed answers in January 2008. In their answers, Davidson Contractors, Mr. Davidson, and Mr. Mason included a statement that the Claytons' complaint could not be heard by the trial court due to an arbitration clause included in the home warranty.

After a long period of inactivity, on June 21, 2010, the trial court entered an initial scheduling order. The order set the case for trial on November 2, 2010. Between 2010 and 2013, the court rescheduled the trial six different times. Davidson Contractors, Mr. Davidson, and Mr. Mason requested at least four of those continuances. During that same time period, the defendants participated in two mediation sessions and several depositions and propounded and answered written discovery. On September 6, 2013, Davidson Contractors, Mr. Davidson, and Mr. Mason filed a "Motion for Stay and Referral of this Matter to Arbitration Pursuant to Arbitration Agreement." In the motion, the defendants requested that the trial court stay the litigation and compel arbitration in accordance with the 2-10 Home Buyers Warranty contract.

On October 7, 2013, the trial court held an evidentiary hearing on the motion. Despite the acknowledgement contained in the "Builder Application for Home Enrollment," Ms. Clayton testified that she and her husband did not receive a sample warranty booklet at the closing. She also maintained that they did not receive a warranty certificate or a warranty booklet within thirty days of the closing, or ever, from Davidson Contractors or HBW. She stated that they only obtained a sample warranty booklet from a neighbor after their lawsuit had been filed.

Both Mr. Davidson and Mr. Mason maintained that Mr. Mason had given a sample warranty booklet to the Claytons at the closing. Davidson Contractors did not keep a copy of the document that they claim was presented to the Claytons. Through Mr. Mason, the defendants introduced a sample warranty booklet obtained from HBW in September 2013. Mr. Mason testified that the sample warranty booklet was the same as that given to the Claytons in 2006. The sample warranty booklet contained an arbitration clause, providing in part as follows:

> **ARBITRATION. Any and all claims, disputes and controversies by or between the homeowner, the Builder, the Warranty Insurer and/or HBW, or any combination of the foregoing, arising from or related to this Warranty, to the subject Home, to any defect in or to the subject Home or the real property on which the subject Home is situated, or the sale of the subject Home by the Builder, including without**

**limitation, any claim of breach of contract, negligent or intentional misrepresentation or nondisclosure in the inducement, execution or performance of any contract, including this arbitration agreement, and breach of any alleged duty of good faith and fair dealing, shall be settled by binding arbitration. Agreeing to arbitration means you are waiving your right to a jury trial.**

**. . . .**

**This arbitration agreement shall be deemed to be a self-executing arbitration agreement. Any disputes concerning the interpretation or the enforceability of this arbitration agreement, including without limitation, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel or laches, shall be decided by the arbitrator.**

**The initiation of or participation by any party in any judicial proceeding concerning this arbitration agreement or any matter arbitrable hereunder shall not be deemed a waiver of the right to enforce this arbitration agreement, and notwithstanding any provision of law to the contrary, shall not be asserted or accepted as a reason to delay, to refuse to participate in, or to refuse to enforce this arbitration agreement.**

(emphasis in original).

On an offer by the Claytons, the trial court also accepted into evidence HBW's response to deposition upon written questions. HBW indicated that it mailed a certificate of warranty and a "2-10 Home Buyers Warranty Booklet" to the Claytons. However, HBW did not indicate when the documents were mailed. HBW acknowledged that no transmittal letters accompanied the certificate of warranty or warranty booklet. HBW did respond that, as a regular business practice, a record was made when mailed items were returned and that there was no such record relative to the Claytons. HBW also responded that the "homeowner" contacted HBW about a warranty claim on November 27, 2007.

At the conclusion of the proof, the trial court denied the motion to stay and compel arbitration. After the oral ruling, counsel for Davidson Contractors, Mr. Davidson, and Mr. Mason asked the trial court if it was finding that "a warranty agreement and [ ] an arbitration provision" existed. In response, the court clarified that it was only ruling on compliance with state law and equitable principles. In its October 10, 2013 order denying the motion, the court cited the Tennessee Uniform Arbitration Act, specifically

the "failure to comply with Tenn. Code Ann. § 29-5-302(a) as the clause providing for arbitration was not additionally signed or initialed by the parties."   As an additional or alternative basis for denying the motion, the trial court found that the "Defendants waived their right to arbitration and/or to invoke the arbitration provision contained in the 2-10 HBW New Home Warranty Booklet by virtue of their conduct and participation in the instant litigation."

## II. ANALYSIS

The appellants, Davidson Contractors, Mr. Davidson, and Mr. Mason, challenge both grounds relied on by the trial court for denying the motion to compel arbitration.  On the first ground, Appellants argue that, although the arbitration clause found in the sample warranty book was not separately initialed, the proximity of the Claytons' signatures to the acknowledgment found in the "Builder Application for Home Enrollment" was sufficient to satisfy Tennessee Code Annotated § 29-5-302(a). Alternatively, they claim that the Tennessee Uniform Arbitration Act ("TUAA") does not apply at all.  On the second ground, Appellants argue that the arbitration clause prohibits a finding of waiver based upon their participation in a judicial proceeding.

### A.  APPLICABLE LAW

As an initial matter, we must determine whether the TUAA or the Federal Arbitration Act ("FAA") applies to the parties' agreement.[1]   When the FAA applies, states may not impose requirements on arbitration agreements beyond those found in the FAA.  *See Southland Corp. v. Keating*, 465 U.S. 1, 15-16 (1984); *Wells v. Tenn. Homesafe Inspections, LLC.*, No. M2008-00224-COA-R3-CV, 2008 WL 5234724, *3 (Tenn. Ct. App. Dec. 15, 2008); *Hubert v. Turnberry Homes, LLC*, No. M2005-00955-COA-R3-CV, 2006 WL 2843449, *6 (Tenn. Ct. App. Oct. 4, 2006).  Although the TUAA requires that agreements to arbitrate regarding residential structures be separately signed or initialed, the FAA does not.  Tenn. Code Ann. § 29-5-302(a) (2012).  Therefore, where the FAA applies, this requirement may not be imposed on the agreement of the parties.

The FAA applies to "[a] written provision in . . . a contract *evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction."  9 U.S.C.A. § 2 (2009) (emphasis added).  The term "commerce" as used in the FAA includes "commerce among the several States." *Id*. § 1. The United States Supreme Court has interpreted the term "involving commerce," and therefore the reach of the FAA, as concurrent with that of the Commerce Clause. *See, e.g.*, *Perry v. Thomas*, 482 U.S. 483, 490 (1987) (The FAA "embodies Congress' intent

---

[1] The FAA and "arbitration law appl[y] in state as well as federal courts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006).

to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause.").

In this case, we conclude that the transaction at issue involves commerce. Davidson Contractors is a Tennessee limited liability company. The home was also constructed in Tennessee and purchased by Tennessee residents. However, the Claytons attribute many of their claims to the alleged actions or inaction of Mr. Davidson and Mr. Mason, residents of Georgia. Documents produced by HBW and introduced into evidence also show Davidson Contractors maintained a Ringgold, Georgia address. Furthermore, HBW, the intended warranty administrator, is headquartered in Colorado. Consequently, the trial court erred in relying on the TUAA and its requirement that arbitration clauses be additionally signed or initialed.[2]

## B. WAIVER

The arbitration clause at issue here contains a delegation provision, "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). Threshold issues may include whether the parties have agreed to arbitrate any dispute at all, whether the agreement covers a particular controversy, or whether the agreement is enforceable. *See id.* at 68-69; 1 Thomas H. Oehmke & Joan M. Brovins, Commercial Arbitration § 20:5 (2014). In this case, the delegation provision defines enforceability issues to include "any defense based upon waiver" and delegates that issue to the arbitrator.

The FAA requires courts to enforce delegation provisions just as they are required to enforce arbitration agreements. *Id.* at 70 (Delegation provisions are "simply an additional, antecedent agreement the party seeking arbitration asks the . . . court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."). However, "the making of the agreement" must not be at issue. 9 U.S.C.A. § 4 (2009).

---

[2] Although it is not dispositive of the issue, we also note that the arbitration clause found in the sample warranty booklet provides as follows:

> **The parties expressly agree that this Warranty and this arbitration agreement involve and concern interstate commerce and are governed by the provisions of the Federal Arbitration Act (9 U.S.C. § 1, et seq.) now in effect and as the same may from time to time be amended, to the exclusion of any different or inconsistent state or local law, ordinance or judicial rule . . . .**

(emphasis in original).

The Claytons specifically placed the making of the agreement for arbitration at issue. Yet, the trial court found that Appellants had waived the right to arbitrate. Finding waiver, without first addressing whether an agreement to arbitrate existed, is problematic in this circumstance. If an agreement to arbitrate did exist, the delegation provision places the issue of waiver with the arbitrator rather than the court.

C. ARBITRABILITY[3]

The Claytons claim they did not enter into the warranty contract. The FAA provides that the court must be "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id*. However, the warranty contract contains an arbitration agreement and a delegation provision providing that "[a]ny disputes concerning . . . the enforceability of this arbitration agreement . . . shall be decided by the arbitrator." In light of the delegation provision, we must determine whether the court or the arbitrator decides the Claytons' claim that there was no warranty agreement. To do so, we review United States Supreme Court precedent interpreting the FAA.

In *Prima Paint Corp. v. Flood & Conklin Manufacturing Company*, 388 U.S. 395 (1967), the Court addressed "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court" or by an arbitrator. 388 U.S. at 402. The parties had entered into a consulting agreement in connection with the sale of a business. *Id.* at 397. The agreement included a broad arbitration clause delegating to an arbitrator "any controversy or claim arising out of or relating to" the contract. *Id.* at 398. After a dispute between the parties arose, the purchaser sought to enjoin the arbitration, claiming that the consulting agreement was invalid because it was fraudulently induced. *Id.* The seller maintained that the purchaser's claim was a question for the arbitrator, not the court. *Id.* at 399.

The Court first concluded that section two of the FAA requires that arbitration clauses be severable from the contracts in which they are embedded. *Id.* at 404. This principle became known as the severability rule. *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 440 (2006). Because the arbitration clause was severable from the remainder of the contract and separately enforceable, the court could not consider the seller's claim that the entire contract was invalid because of fraud in the inducement of the contract generally. *Prima Paint*, 388 U.S. at 404. Only, "if the claim [wa]s fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—[could] the federal court [ ] proceed to adjudicate it." *Id.* at 403-04. The Court later acknowledged that the *Prima Paint* severability rule

---

[3] Arbitrability is defined as "[t]he status, under applicable law, of a dispute's being or not being resolvable by arbitrators because of the subject matter." Black's Law Dictionary (10th ed. 2014).

allows a "court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void." *Buckeye*, 561 U.S. at 448. However, the opposite approach would permit a "court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable." *Id.* at 448-49. "*Prima Paint* resolved this conundrum . . . in favor of the separate enforceability of arbitration provisions." *Id.* at 449.

Almost forty years later, in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), the Court applied the severability rule to contracts that may be void as well as voidable. 546 U.S. at 447-78. In that case, borrowers claimed that a lending agreement they signed with Buckeye Check Cashing was rendered invalid because the agreement's usurious finance charge was illegal. *Id.* at 443. The Court reiterated that, unless a party specifically challenges the arbitration clause itself, rather than the validity of the contract as a whole, an arbitrator decides whether the contract is valid. *Id.* at 445-46. Therefore, because the borrowers argued that "the contract as a whole (including its arbitration provision) [wa]s rendered invalid," the arbitration provision remained separately enforceable. *Id.* at 444, 445-46. However, the Court distinguished situations where the issue was "the contract's validity," as in the case before it, from situations where the issue was "whether any agreement between the alleged obligor and obligee was ever concluded." *Id.* at 444, n.1.

In *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), the Court applied the severability rule to arbitration agreements with delegation provisions. 561 U.S. at 72. In that case, an employee signed an arbitration agreement with Rent-A-Center as a condition of his employment. *Id.* at 68. The delegation provision of the agreement stated, "the Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.* at 66. The employee claimed that the arbitration agreement, including the delegation clause, was invalid because the entire agreement was unconscionable. *Id.* Relying on the delegation provision, Rent-A-Center sought to compel arbitration of the employee's unconscionability claim. *Id.* at 68.

Although the whole agreement in *Rent-A-Center* was a stand-alone arbitration agreement, the Court still held the severability rule applicable. *Id.* at 72. The Court held that, where a party seeking to compel arbitration relies on a delegation provision, only if a party specifically challenges the enforceability of the delegation provision will the court consider the challenge. *Id.* "[B]ut if a party challenges the enforceability of the agreement as a whole, the challenge is for the arbitrator." *Id.* at 63. However, the Court again cautioned that "[t]he issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded,' and, as in *Buckeye . . .*, we address only the former." *Id.* at 70, n.2 (quoting *Buckeye*, 561 U.S. at 444, n.1).

Three days after the *Rent-A-Center* decision, the Court decided *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010), finally addressing the arbitrability issue in light of a party's claim that an agreement between the parties "was [n]ever concluded." *See Rent-A-Center*, 561 U.S. 70, n.2. In *Granite Rock*, an employer sued an international and local union, alleging that a labor strike breached a no-strike clause in the parties' collective bargaining agreement ("CBA").[4] *Granite Rock*, 561 U.S. at 287. The parties disputed when the CBA was ratified by the union and, thus, disagreed over when the CBA was formed. *Id.* at 297, 297, n.4. The local union sought to have the dispute decided by an arbitrator. *Id.* at 287.

The Court began its analysis by noting that "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Id.* at 297; *see also* 9 U.S.C.A. § 4. To satisfy itself that such an agreement exists, the court must resolve: (1) any issue questioning the formation of the parties' arbitration agreement; and (2) absent a valid delegation provision, any issue regarding the enforceability or applicability of the arbitration agreement to the dispute. *Granite Rock*, 561 U.S. at 299.

In *Prima Paint*, *Buckeye*, and *Rent-A-Center*, the Court only compelled arbitration "after . . . [being] persuaded that the parties' arbitration agreement was validly formed and that it covered the dispute in question and was legally enforceable." *Granite Rock*, 561 U.S. at 300. In *Prima Paint*, the parties did not dispute that they entered into a consulting agreement—the seller alleged only that the contract as a whole should be declared invalid because it was fraudulently induced. *Prima Paint*, 388 U.S. at 402. In *Buckeye*, the formation of the parties' agreement was not at issue because the parties agreed they had concluded an agreement to arbitrate in their loan contract. *Buckeye*, 546 U.S. at 444. Instead, the borrower claimed that the contract should be declared invalid because it was illegal. *Id.* Similarly, the parties in *Rent-A-Center* did not dispute that they agreed to an arbitration agreement—the employee claimed that the entire contract should be declared invalid for unconscionability. *Rent-A-Center*, 561 U.S. at 68. Because the parties in those cases did not challenge their consent to the agreement to arbitrate within the broader contract, the severability rule applied, and the arbitration provision was enforced. *See, e.g.*, *Buckeye*, 561 U.S. at 448.

However, as the Court noted in *Granite Rock,* the severability rule *does not* apply when a "party resisting arbitration specifically challenges the enforceability of the

---

[4] The same rules of arbitrability govern cases applying the FAA and the Labor Management Relations Act ("LMRA"). *See Granite Rock*, 561 U.S. at 298, n.6. For example, *Granite Rock* involved an arbitrability dispute under the LMRA, but the Court discussed and relied upon precedents applying the FAA.

arbitration clause itself," *Granite Rock*, 561 U.S. at 301 (citing *Buckeye*, 546 U.S. at 443-45), or a party "claims the agreement to arbitrate was '[n]ever concluded.'" *Granite Rock*, 561 U.S. at 299, 301 (quoting *Buckeye* 546 U.S. at 444, n. 1 and *Rent-A-Center* 561 U.S. at 70, n. 2). In *Granite Rock*, the union claimed a contract had not been formed as of the date of the strike. *Id.* at 287. Therefore, the Court concluded that a court, rather than an arbitrator, must resolve the parties' formation dispute. *Id.* at 303.

When read together, *Prima Paint*, *Buckeye*, *Rent-A-Center*, and *Granite Rock* stand for the proposition that the court resolves two types of issues relating to an agreement to arbitrate: (1) a challenge to the validity of the specific arbitration clause sought to be enforced; and (2) a challenge to the *formation* of a contract, which may include an agreement to arbitrate. *See In re Morgan Stanley & Co.*, 293 S.W.3d 182, 187 (Tex. 2009). Where there is a delegation provision, an arbitrator decides a party's challenge to the *validity* of the contract as a whole. *Id.* Therefore, when a party claims it never concluded an agreement at all, it is for the court, not the arbitrator, to determine whether the parties agreed to the arbitration provision upon which the party seeking arbitration relies. *Granite Rock*, 561 U.S. at 299-300. Although there is a federal policy favoring arbitration, that policy does not override the principle of consent. *Id.* at 302.

The line between contract formation issues and contract validity issues is a fine one. *See In re Morgan Stanley*, 293 S.W.3d at 192 (Willett, J., concurring) (describing the line between contract formation and contract validity issues as "murky").[5] Fortunately, the Court provided some guidance in *Buckeye* as to which contractual defenses are formation issues to be considered by the courts. *See Buckeye*, 546 U.S. 444, n.1 (suggesting that the following defenses were formation issues: lack of signature on a contract; signor's lack of authority to bind principal; and mental capacity to assent). We can also conclude from *Prima Paint*, *Buckeye*, and *Rent-A-Center* that fraudulent inducement, illegality, and unconscionability are contract validity issues.

In the case before us, the Claytons present a classic formation issue—they argue a contract was never formed. Specifically, they claim they never received the certificate of warranty coverage or warranty booklet within thirty days of closing. Under the "Builder Application for Home Enrollment," receipt of the certificate and booklet is a prerequisite to "coverage by the builder's warranty insurer." Their contract formation issue precludes application of the severability rule, so they were not required to specifically challenge the arbitration agreement or delegation provision in order to avoid arbitration. *Granite Rock*, 561 U.S. at 299-301. They raise an issue that the court must resolve before compelling

---

[5] Adding to the confusion, the plain language of the FAA suggests courts have the authority to consider both formation and validity issues before compelling arbitration. *See Rent-A-Center*, 561 U.S. at 78 (Stevens J., dissenting) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)); *see also* 9 U.S.C.A. § 4 (allowing courts to consider the "making" of the agreement for arbitration).

- 10 -

arbitration. *Buckeye*, 546 U.S. at 444, n.1; *Rent-A-Center*, 561 U.S. at 70, n.2; *Granite Rock*, 561 U.S. at 299.

Requiring the court to resolve the Claytons' claim that a contract was never formed is sound policy. Compelling a party to arbitrate whether he actually agreed to arbitrate a dispute is "hopelessly circular." *Bruni v. Didion*, 73 Cal. Rptr. 3d 395, 408 (Cal. Ct. App. 2008). Judicial determination of the Claytons' formation issue also avoids a serious "bootstrapping" problem regarding the arbitrator's authority. *Id.* at 406; *see also Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 869 (7th Cir. 1985). If the Claytons were compelled to arbitrate whether they agreed to the warranty contract, including the delegation provision, the arbitrator would determine his own authority to decide the parties' dispute. If the arbitrator concluded the parties did not have a contract, the arbitrator had no authority to decide the dispute. If the arbitrator concluded the parties did have a contract, the arbitrator effectively granted himself jurisdiction. *See In re Morgan Stanley*, 293 S.W.3d at 193 (Hecht, J., dissenting). Finally, this outcome is consistent with arbitration law's focus on the parties' consent to arbitrate a particular dispute. *Granite Rock*, 561 U.S. at 302 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

Requiring the court to resolve the Claytons' claim that a contract was never formed is also consistent with the decisions of other courts. *See, e.g.*, *Bruni*, 73 Cal. Rptr. 3d at 406 (concluding that a court must consider a contract formation challenge before compelling arbitration in a dispute involving home buyers, builders, and an HBW warranty); *Thompson v. Lithia Chrysler Jeep Dodge of Great Falls, Inc.*, 185 P.3d 332 (Mont. 2008); *Spahr v. Secco*, 330 F.3d 1266 (10th Cir. 2003); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587 (7th Cir. 2001); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99 (3d Cir. 2000); *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851 (11th Cir. 1992). Although these cases were decided before *Rent-A-Center*, that decision did not address a scenario where a party argued that no agreement "was ever concluded." *Rent-A-Center*, 561 U.S. at 70, n.2. Moreover, *Granite Rock* confirms that courts must satisfy themselves that the parties agreed to arbitrate a particular dispute before compelling arbitration. 561 U.S. at 297; *see also Kum Tat Ltd. v. Linden Ox Pasture, LLC*, No. 14-CV-02857-WHO, 2014 WL 6882421, at *5 (N.D. Cal. Dec. 5, 2014) (appeal pending); *In re Morgan Stanley*, 293 S.W.3d at 188.

Because the trial court must consider the Claytons' claim that no contract was formed, we remand this case to the trial court. On remand, the trial court must determine whether the Claytons entered into the HBW warranty contract, including its agreement to arbitrate disputes and delegation provision. If the trial court concludes that a contract was formed among HBW, Davidson Contractors, and the Claytons, an arbitrator must decide the parties' dispute, including the issue of waiver. If the trial court concludes that

a contract was not formed, the court may decide the parties' dispute.

### III. CONCLUSION

For the foregoing reasons, we vacate the trial court's judgment and remand for further proceedings consistent with this opinion.

_____
W. NEAL McBRAYER, JUDGE