IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 18, 2017 Session

## REGINA EDWARDS v. ALLENBROOKE NURSING AND REHABILITATION CENTER, LLC

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-000601-16    James F. Russell, Judge**

_____

### No. W2016-02553-COA-R3-CV

_____

This appeal involves an arbitration agreement executed in connection with a nursing home admission. The trial court found no evidence that the individual who signed the arbitration agreement on behalf of the resident had authority to do so, and that, in any event, the form itself was not properly completed. Accordingly, the trial court denied the nursing home's motion to compel arbitration. The nursing home appeals and argues that the trial court erred in deciding these issues because they should have been resolved by an arbitrator. We affirm and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, J.J., joined.

Craig Creighton Conley and Michael T. Goodin, Memphis, Tennessee, for the appellant, Allenbrooke Nursing and Rehabilitation Center, LLC.

Thomas R. Greer, Memphis, Tennessee, for the appellee, Regina Edwards.

### OPINION

### I. FACTS & PROCEDURAL HISTORY

This appeal arises out of a wrongful death and health care liability suit. The plaintiff, Regina Edwards, instituted the action as daughter and next of kin of Naomi Edwards ("Mother"), on behalf of all wrongful death beneficiaries. The named defendant was Allenbrooke Nursing and Rehabilitation Center, LLC. Allenbrooke filed a motion to compel arbitration, asserting that Mother and Allenbrooke entered into an arbitration

agreement in connection with her admission to the facility. Allenbrooke claimed that Mother was bound by the arbitration agreement because another daughter, Theresa Edwards, "signed the Agreement on her behalf, with authority to do so pursuant to an Appointment of Surrogate form[.]"

Allenbrooke attached the Appointment of Surrogate form to its motion to compel arbitration. The form reflects that Theresa Edwards signed it on April 18, 2012, in the section entitled, "Acceptance of Surrogate Selection," which stated:

> I accept the appointment as surrogate for this Resident and understand I have the authority to make all health care related decisions for <u>Theresa Edwards</u> [sic] including the signing of an arbitration agreement.

(The handwritten name "Theresa Edwards" was erroneously placed in the blank above instead of Mother's name, Naomi Edwards.) Mother signed the Appointment of Surrogate form the next day, beneath the statement, "I, <u>Naomi Edwards</u>, make the decision to appoint <u>Theresa Edwards</u> as my surrogate." The arbitration agreement, a separate document, was signed by Theresa Edwards on April 18, the day before Mother signed the Appointment of Surrogate form.

In its motion to compel arbitration, Allenbrooke argued that Theresa Edwards had authority to sign the arbitration agreement on behalf of Mother as her health care surrogate pursuant to the Appointment of Surrogate form and the Tennessee Health Care Decisions Act, Tenn. Code Ann. § 68-11-1801, et seq. Allenbrooke also argued that in the event any disputes arose regarding the arbitration agreement itself, including disputes regarding its enforceability, those disputes must be referred to arbitration because the agreement required arbitration of "any disputes arising out of or in any way relating to this Agreement (its enforceability)[.]"

Plaintiff Regina Edwards filed a response asserting that Theresa Edwards did not have legal authority to bind Mother to the arbitration agreement on the date the document was signed. Plaintiff noted that Mother did not sign the Appointment of Surrogate form until April 19, the day after Theresa Edwards signed the Appointment of Surrogate form and the arbitration agreement. Plaintiff claimed that the trial court was required to decide whether a valid contract existed, not an arbitrator.

The trial court held a hearing on the matter on September 23, 2016, although we do not have a transcript of this hearing in the appellate record. On November 4, 2016, the trial court entered a written order denying Allenbrooke's motion to compel arbitration with an attached and incorporated transcript of the trial judge's oral ruling. The trial court acknowledged Allenbrooke's argument that the arbitration agreement provided for any disputes regarding its enforceability to be decided in the arbitral forum. However, the court also noted Plaintiff's argument that "there was never any binding arbitration agreement in the first place" because Mother had not signed the Appointment of Surrogate form at the time when Theresa Edwards signed it and the arbitration agreement.

The trial court ultimately found that Theresa Edwards did not have the authority to make a health care decision on behalf of Mother pursuant to the Tennessee Health Care Decisions Act, regardless of any discrepancy about the dates on the relevant documents. The trial court discussed the language of Tennessee Code Annotated section 68-11-1806, which provides, in pertinent part:

> (a) An adult or emancipated minor may designate any individual to act as surrogate by personally informing the supervising health care provider. The designation may be oral or written.
>
> (b) A surrogate may make a health care decision for a patient who is an adult or emancipated minor, if, and only if:
>
> (1) *The patient has been determined by the designated physician to lack capacity*; and
>
> (2) No agent or guardian has been appointed or the agent or guardian is not reasonably available.

(Emphasis added.) The trial court noted that the Appointment of Surrogate form at issue in this case was signed by Mother's designated physician on April 20, and the physician made an express finding that Mother "has capacity to understand the significant benefits, risks, and alternatives to proposed health care and to make and communicate a health care decision." Without any evidence in the record to indicate that a physician had determined that Mother lacked capacity, the trial court concluded that Theresa Edwards did not have the authority to sign the arbitration agreement on Mother's behalf as her surrogate. The trial court also found that the Appointment of Surrogate form was not properly completed because it erroneously stated that Theresa Edwards had "authority to make all health care related decisions for Theresa Edwards." As a result, the court concluded that the "acceptance [] was flawed and as such void from the very beginning."

3

For these reasons, the trial court denied Allenbrooke's motion to compel arbitration. Allenbrooke timely filed a notice of appeal.

## II. ISSUES PRESENTED

At the outset, we emphasize that the issue raised by Allenbrooke on appeal is narrow:

> Whether the trial court erred in deciding issues related to the enforceability of the Arbitration Agreement, when the trial court failed to recognize that the plain language of the Agreement states that the Federal Arbitration Act governs the Agreement and the parties agreed that an arbitrator would decide all questions regarding the enforceability of the Agreement?

Notably, Allenbrooke does not challenge the substantive merit of the conclusions reached by the trial court. Allenbrooke's brief states, "Whether the Agreement is, or is not, enforceable is not relevant to the issue before this Court. Instead, the question is whether the trial court should have made the decision at all." In its reply brief, Allenbrooke further noted, "A large section of Plaintiff's Brief is devoted to whether the Surrogate Form is valid and enforceable. . . . Whether the Surrogate Form is valid or enforceable is, however, not relevant to the issues before this Court." In accordance with these representations and the narrow issue listed in Allenbrooke's brief, we will limit our review on appeal to *whether the trial court erred in deciding* these threshold issues regarding the arbitration agreement rather than referring them to an arbitrator.

## III. DISCUSSION

On appeal from a denial of a motion to compel arbitration, we apply the standard of review applicable to bench trials and review issues of law *de novo* without a presumption of correctness. *Webb v. First Tenn. Brokerage, Inc.*, No. E2012-00934-COA-R3-CV, 2013 WL 3941782, at *14 (Tenn. Ct. App. June 18, 2013).

The arbitration agreement in this case provided that the arbitrator would apply Tennessee law "except that the parties expressly stipulate that the Federal Arbitration Act, 9 U.S.C. §§ 1-16 shall exclusively govern the enforcement of this Agreement." On appeal, Allenbrooke maintains that under the Federal Arbitration Act, "parties to an arbitration agreement may agree to refer issues regarding the enforceability of the arbitration agreement to an arbitrator." Allenbrooke relies on this Court's statement in

*Berkley v. H & R Block Eastern Tax Services, Inc.*, 30 S.W.3d 341, 344 (Tenn. Ct. App. 2000), that "the parties may contract to arbitrate the question of the validity and enforceability of the arbitration clause itself." Allenbrooke claims that the parties here did just that because the arbitration agreement provided that the parties would arbitrate "any disputes arising out of or in any way relating to this Agreement (its enforceability)[.]" We do not disagree with the statement from *Berkley*, but the particular dispute at issue in this case is not the type of dispute that is to be decided by the arbitrator.

In the context of an arbitration agreement, an agreement to arbitrate threshold issues concerning the arbitration agreement is known as a delegation provision. *Clayton v. Davidson Contractors, LLC*, No. E2013-02296-COA-R3-CV, 2015 WL 1880973, at *4 (Tenn. Ct. App. Apr. 24, 2015) (*no perm. app. filed*) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). The Federal Arbitration Act "requires courts to enforce delegation provisions just as they are required to enforce arbitration agreements." *Id.* (citing *Rent-A-Center*, 561 U.S. at 70)). "However, 'the making of the agreement' must not be at issue." *Id.* (quoting 9 U.S.C.A. § 4 (2009)). The Federal Arbitration Act provides in section 4 that the court must be "satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C.A. § 4.

In *Clayton*, for example, the plaintiffs claimed that they did not enter into the contract at issue (which was governed by the Federal Arbitration Act). *Id.* at *5. The contract contained an arbitration agreement and a delegation provision stating that any disputes concerning "the enforceability" of the arbitration agreement would be decided by an arbitrator. *Id.* This Court was tasked with deciding, in light of the delegation provision, whether the court or the arbitrator should decide the plaintiffs' claim that there was no agreement. *Id.* We examined several cases from the United States Supreme Court interpreting the Federal Arbitration Act. In those cases, the United States Supreme Court had recognized a distinction between issues regarding an agreement's "validity" and issues regarding whether any agreement "was ever concluded" in the first place. *Id.* at *5-6 (citing *Rent-A-Center*, 561 U.S. at 70 n.2; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)). And, in *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010), the Supreme Court specifically addressed the arbitrability issue in light of a party's claim that an agreement between the parties was never concluded. *Id.* at *6. We noted that in *Granite Rock*, the Supreme Court reiterated that "'a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*.'" *Id.* (quoting *Granite Rock*, 561 U.S. at 297); *see* 9 U.S.C.A. § 4. In order to satisfy itself that such an agreement exists, *the court* must first resolve "any issue questioning the formation of the parties' arbitration agreement." *Id.* (citing *Granite Rock*, 561 U.S. at 299). In other words, "a court, rather than an arbitrator, must resolve the parties' formation dispute."

5

*Id.* at *7 (citing *Granite Rock*, 561 U.S. at 303). "Although there is a federal policy favoring arbitration, that policy does not override the principle of consent." *Id.* (citing *Granite Rock*, 561 U.S. at 302). Accordingly, a "challenge to the *formation* of a contract" is a question to be resolved by the court. *Id.*[1]

In sum, "when a party claims it never concluded an agreement at all, it is for the court, not the arbitrator, to determine whether the parties agreed to the arbitration provision upon which the party seeking arbitration relies." *Id.* (citing *Granite Rock*, 561 U.S. at 299-300). As a practical matter, the *Clayton* court observed that requiring a trial court to resolve a claim that a contract was never formed was "sound policy." *Id.* at *8. Compelling a party to arbitrate whether he actually agreed to arbitrate would be "'hopelessly circular.'" *Id.* (quoting *Bruni v. Didion*, 73 Cal. Rptr. 3d 395, 408 (Cal. Ct. App. 2008)). It would also lead to a "bootstrapping" problem with the arbitrator determining his own authority to decide the dispute. *Id.*

Returning to the facts in *Clayton*, the court concluded that the parties in that case presented "a classic formation issue" by arguing that "a contract was never formed." *Id.* at *7. This was an issue that the court was required to resolve before compelling arbitration. *Id.* at *8. Therefore, this Court remanded the case to the trial court for consideration of whether a contract was formed. *Id.*[2]

Like the agreement in *Clayton*, the arbitration agreement in this case contains a delegation provision providing that issues of "enforceability" would be determined by the arbitrator. However, that does not mean that the arbitrator must decide issues of contract *formation*. The trial court must resolve "any issue questioning the formation of the parties' arbitration agreement." *Id.* at *6; *see* 9 U.S.C.A. § 4. In *Clayton*, this Court recognized that "[t]he line between contract formation issues and contract validity issues is a fine one." *Id.* at *7 (citing *In re Morgan Stanley*, 293 S.W.3d 182, 192 (Tex. 2009) (Willett, J., concurring)). However, examining the same precedent from the United States Supreme Court, we found that the Court had provided "some guidance . . . as to which contractual defenses are formation issues to be considered by the courts," and those formation issues include lack of a signature on a contract, the signor's lack of authority to bind the principal, and mental capacity to assent. *Id.* (citing *Buckeye*, 546

[1]Tennessee law also contemplates judicial resolution of contract formation issues. *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999).

[2]The *Granite Rock* decision was also discussed at length in *Mid-South Maintenance Inc. v. Paychex Inc.*, No. W2014-02329-COA-R3-CV, 2015 WL 4880855 (Tenn. Ct. App. Aug. 14, 2015) (*no perm. app. filed*). There, we likewise concluded from *Granite Rock* that "questions of contract formation must be determined by the court, rather than the arbitrator." *Id.* at *9. "[T]he issue of whether a contract containing an arbitration provision was formed remains a question that must be determined by the court as a threshold matter." *Id.*

U.S. at 444 n.1). In the case at bar, the trial court considered issues regarding the signor's lack of authority to bind the principal and whether her acceptance of the agreement was void due to the error in the language of the agreement. Applying the principles from *Granite Rock* and *Clayton*, the trial court did not err in deciding these issues rather than referring them to an arbitrator.[3] *See Wilson v. Americare Sys., Inc.*, No. M2008-00419-COA-R3-CV, 2009 WL 890870, at *4-5 (Tenn. Ct. App. Mar. 31, 2009) (finding "there was [not] a valid arbitration agreement for the trial court to enforce" when the record did not indicate that the signor was ever designated as a surrogate and the patient was not determined by a physician to lack capacity, as required by the Tennessee Health Care Decisions Act); *Barbee v. Kindred Healthcare Operating, Inc.*, No. W2007-00517-COA-R3-CV, 2008 WL 4615858, at *1 (Tenn. Ct. App. Oct. 20, 2008) (finding that the statutory requirements for a son to be considered his mother's surrogate under the Health Care Decisions Act were not met and therefore he did not have authority to bind her to the arbitration agreement).

In its brief on appeal, Allenbrooke claims that the trial court erred by basing its decision "entirely on the validity of the Appointment of Surrogate form" and "fail[ing] to consider the other various ways in which Theresa Edwards could obtain the actual or apparent authority to sign the Agreement on behalf of [Mother]." However, the record before us contains nothing to suggest that Allenbrooke raised these issues in the trial court. As the proponent of the arbitration agreement, Allenbrooke had the burden of establishing that Theresa Edwards had authority to sign the agreement on Mother's behalf. *See Mitchell v. Kindred Healthcare Operating, Inc.*, No. W2008-01643-COA-R3-CV, 2009 WL 1684647, at *3 (Tenn. Ct. App. June 17, 2009); *Barbee*, 2008 WL 4615858, at *12; *see also Webb*, 2013 WL 3941782, at *19 (acknowledging that the defendant who filed the motion to compel arbitration had the burden to show that the plaintiff agreed to arbitrate). In its motion to compel arbitration, Allenbrooke unequivocally alleged that "[t]he signing of the Surrogate Form by Theresa Edwards gave her the authority to sign the Arbitration Agreement for Naomi Edwards on April 18,

---

[3]In its reply brief, Allenbrooke seems to suggest that the Supreme Court's recent decision in *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct. 1421, 1428 (2017), might require a different approach. We respectfully disagree. In *Clark*, the Kentucky Supreme Court had fashioned a "clear-statement rule" by which a general grant of power of attorney did not include the power to enter into an arbitration agreement without specific authority to that effect. *Id.* at 1426. The United States Supreme Court held that this rule singled out arbitration agreements for disfavored treatment in violation of the Federal Arbitration Act. *Id.* at 1425. In its discussion, the Court rejected an argument that states have "free rein" to decide all contract formation issues and that the Federal Arbitration Act "had nothing to say about contract formation." *Id.* at 1428. However, the Court did not say that contract formation issues must be decided by an arbitrator, as Allenbrooke claims in this case. In fact, the United States Supreme Court remanded for the *state court* to decide whether the language of the power of attorney was sufficiently broad to authorize the execution of the arbitration agreement in a manner that was independent of its impermissible "clear-statement rule." *Id.* at 1429.

2012." Allenbrooke only argued that Theresa Edwards was authorized to sign as a health care surrogate pursuant to the Tennessee Health Care Decisions Act, and it did not rely on any other theory of agency or authority in support of its motion. As a result, we cannot say that the trial court erred in failing to consider any other available theories that might have existed. Allenbrooke did not carry its burden of establishing that Theresa Edwards had authority to execute the arbitration agreement on Mother's behalf under any alternative theory.[4]

Allenbrooke also suggests in its brief on appeal that the trial court should have allowed it "to conduct additional discovery *in the arbitral forum*" in order to explore whether actual or apparent authority may have existed. (Emphasis added.) Here, again, it is important to note what Allenbrooke does *not* argue. Allenbrooke does not contend that discovery should have taken place *in the trial court.* In its motion to compel arbitration, Allenbrooke asked the trial court to require the parties to arbitrate and to immediately "stay all proceedings in this action, including all discovery proceedings, pending resolution of arbitration." If anything, Allenbrooke's motion to compel arbitration suggested that no discovery should take place in the trial court:

> The FAA requires state courts to stay proceedings, including discovery, on an issue referable to arbitration under an arbitration agreement. See 9 U.S.C. § 3; Tenn. Code Ann. § 29-5-303; Southeast Drilling & Blasting Serv.'s, Inc. v. BRS Constr. Co., No. 01A01-9706-CH-00272, 1997 WL 399387 (Tenn. Ct. App. July 16, 1997) (reversing trial court's order compelling discovery while defendant's motion to compel arbitration was pending). . . .
> This Court should also stay all proceedings immediately in order to promote judicial economy and efficiency. If this Court grants Allenbrooke's Motion to Compel, it will not need to address the merits of Plaintiff's Complaint. Because the merits of Plaintiff's lawsuit would become moot, all discovery relating to the merits of the case would likewise become moot. To order Allenbrooke to respond to the Complaint or to any discovery in this case would not promote judicial economy.

[4]Allenbrooke's reply brief states, "Plaintiff appears to argue that . . . a valid surrogate form is necessary before an agent can enter into an arbitration agreement on behalf of a principal," and Allenbrooke claims such a rule would be barred by the United States Supreme Court's recent *Clark* decision. Its reply brief states, "To the extent that Plaintiff in this case argues that a general grant of authority by a principal to an agent is insufficient to authorize the agent to enter into an arbitration agreement on behalf of the principal, Plaintiff's argument is directly contradicted by the United States Supreme Court's decision [in] Kindred." However, Plaintiff clearly is not advocating for such a rule in this case. The limited nature of the issue decided by the trial court was directly traceable to the limited issue presented in Allenbrooke's motion to compel arbitration.

Instead, it would unnecessarily impose a needless burden on Allenbrooke. .
. . Accordingly, Allenbrooke respectfully requests that this action, including
all discovery, be stayed pending arbitration of this matter.

Even in its brief on appeal, Allenbrooke insists that it is "entitled to pursue arbitration related discovery *in the arbitral forum*" pursuant to the "clear language of the [arbitration] Agreement." (Emphasis added.) Allenbrooke suggests that if it is "unable to establish that [Theresa] Edwards had the authority to sign the Agreement on behalf of her mother following discovery in the arbitral forum, the case would then return to the trial court." However, Allenbrooke insists that it should not be required to conduct such discovery in the trial court. According to Allenbrooke, "Requiring Defendant to engage in extensive discovery in the trial court regarding the enforceability of the Agreement is to force Defendant to engage in the very conduct the parties contracted to avoid." However, this argument assumes that "the parties contracted" to do anything. The issues of contract *formation* must be resolved by the trial court on the front end. To use the language from *Clayton*, it would be "hopelessly circular" to compel a party to arbitration to engage in discovery regarding whether he or she agreed to arbitrate. Due to the trial court's findings regarding the contract formation issues discussed above, which Allenbrooke does not challenge, Allenbrooke is not entitled to enforce the provisions of the arbitration agreement regarding discovery. Simply put, if the arbitration agreement was not legally binding between the parties, neither was its provision regarding discovery. We discern no basis for granting relief to Allenbrooke regarding this issue.

## IV. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellant, Allenbrooke Nursing and Rehabilitation Center, LLC, and its surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE